IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SALVADOR GUTIERREZ NEGRETE, JUVENTINO AGUILAR CRUZ, ROGELIO FLAVIAN MARTINEZ, EFREN HUITRON CRUZ, AND NOE HUITRON CRUZ**, individuals,<br><br>    Plaintiffs,<br><br>    v.<br><br>**COMMERCIAL ROOFING SOLUTIONS INC.**, an Oregon Domestic Business Corporation, **KENNETH BURNS**, an individual, and **MISAEL NARANJO**, an individual,<br><br>    Defendants. | Case No. 3:18-cv-1999-SI<br><br>**OPINION AND ORDER** |

Kate Suisman and Corinna Spencer-Scheurich, NORTHWEST WORKERS' JUSTICE PROJECT, 812 SW Washington St., Suite 225, Portland, OR 97205; D. Michael Dale, LAW OFFICE OF D. MICHAEL DALE, PO Box 1032, Cornelius, OR 97113. Of Attorneys for Plaintiffs.

Andrew E. Teitelman, LAW OFFICE OF ANDREW E. TEITELMAN, PC, 250 Princeton Avenue, Suite 201, Gladstone, OR 97027. Of Attorneys for Defendants Commercial Roofing Solutions Inc. and Kenneth Burns.

**Michael H. Simon, District Judge.**

Plaintiffs are several construction workers who allege they are owed payment for roofing work they performed in early 2018. Plaintiffs assert that they were joint employees of Defendants Misael Naranjo ("Naranjo"), Commercial Roofing Solutions, Inc. ("CRS"), and CRS's President, Kenneth Burns. Plaintiffs bring claims for unpaid wages under the Fair Labor Standards Act ("FLSA") and Oregon's wage and hour laws. Plaintiffs also claim that Defendants violated Oregon's law requiring timely payment of wages. Finally, Plaintiffs allege that CRS and Burns violated the Oregon's Contractor Registration Act ("OCRA") by knowingly using the services of an unlicensed labor contractor. The Court has already entered an order of default against Naranjo. CRS and Burns have moved for summary judgment, and Plaintiffs has moved for partial summary judgment. For the reasons explained below, the Court grants Plaintiffs' motion for partial summary judgment and denies Defendants' motion for summary judgment.

**STANDARDS**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## BACKGROUND

CRS signed an agreement with a customer to perform "tear-off" and shingle re-roofing work at Todd Village Apartments, a development near Portland. CRS then entered into a subcontract with Naranjo to carry out that work. The subcontract does not mention the provision of labor but Burns testified in deposition that Naranjo was "a labor only type subcontractor and we provide the material." Burns also described Naranjo's duties as providing "all the labor, all the personnel to complete the labor, and every – pretty much the whole – removal and installation of the project itself. And I was required to provide him this material and some

equipment, such as a lift, debris boxes, that type of stuff." Burns testified that he asked Naranjo to provide a license and certificates of insurance, but that Naranjo never did so, and Burns "didn't think much about it. I thought, okay. You know, you get busy working." Naranjo did not in fact hold a labor contractor license.

Naranjo then recruited Plaintiffs to work at Todd Village. Naranjo did not disclose to Plaintiffs, in writing or otherwise, the terms and conditions of employment before the work began. Naranjo negotiated Plaintiffs' wages for the project based on the amount of work done. But Plaintiffs never were paid for their work on the project, which lasted for about three weeks.

Plaintiffs eventually told Burns about the unpaid wages, which Plaintiffs calculated at $19,000. Burns then offered to pay Plaintiffs a portion of their claimed wages, but Plaintiffs refused the offer. During the conversation, Burns learned that Naranjo did not have a contractor's license or certificates of insurance. Burns then terminated the subcontractor agreement with Naranjo, although he then hired Naranjo and several of the Plaintiffs as direct employees to complete the work.

## DISCUSSION

**A. CRS Jointly Employed Plaintiffs Under the FLSA and Oregon Law**

Plaintiffs bring claims against CRS under the FLSA and Oregon wage laws to recover their unpaid minimum wages and overtime as well as statutory and penalty damages. CRS contends that it did not "employ" Plaintiffs. Whether an entity acted as a joint employer is a question of law, provided the underlying material facts are not in dispute[1]. *See Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.

---

[1] The parties agree that no underlying material facts are in dispute on this issue.

§ 203(d). The definition of "employ" includes "to suffer or permit to work." 29 U.S.C. § 203(g). This definition is broad, and Congress intended to encompass more working relationships than only common law master-servant relationships. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728-29 (1947). "Courts have adopted an expansive interpretation of the definitions of 'employer' and 'employee' under the FLSA, in order to effectuate the broad remedial purposes of the Act." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).

In evaluating whether an employment relationship exists under the FLSA, courts look to the totality of the circumstances. *Rutherford*, 331 U.S. at 730. The Ninth Circuit has set forth 13 factors, none of which is dispositive. *Torres-Lopez v. May*, 111 F.3d at 639-40. The court's goal is to reveal the "economic reality" of the working relationship and shed light on the extent of the worker's economic dependence on the alleged employer. *Id.* at 640-41. The alleged employer's capacity to prevent labor law violations is an important consideration. *Id.* at 640.

### 1. Regulatory factors

The first five factors are referred to as "regulatory" factors. They are: (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; and (5) preparation of payroll and the payment of wages.

#### a. Control and Supervision

CRS reserved significant control of the work at Todd Village. The company's representative, Terry Wyatt, was on site most days to direct the order of the roofs the workers shingled and to ensure a steady supply of building materials, which CRS provided. Wyatt, not Naranjo, met with the third-party roofing consultant whose job was to ensure the roofing was "done to spec and everything's done correctly." After the completion of each roof, CRS's Wyatt

would walk the finished roof and tell the foreperson if anything more needed to be done. Wyatt also decided the order in which Plaintiffs completed the roofs. Although CRS did not directly supervise Plaintiffs and their work, CRS held ultimate control over the project and indirectly supervised Plaintiffs through Wyatt's daily interactions with Naranjo. That an intermediary carries out an alleged employer's supervisory control does not negate a degree of on-the-job control of the workers. *See Torres-Lopez*, 111 F.3d at 643.

### b. Pay Rates and Methods, Right to Hire and Fire, and Payment of Wages

Naranjo, not CRS, was supposed to pay Plaintiffs at the rate and in the manner Naranjo established. Naranjo also decided how many workers should work on the project at any given time. Also, CRS may not have even retained the right to hire or fire any particular worker that Naranjo brought to the work site. Further, neither Naranjo nor CRS determined the hours of work, which were set by the customer. The preparation of payroll and the payment of wages is not a relevant consideration here, as this dispute arose precisely because Plaintiffs never were paid their wages.

### 2. Nonregulatory factors

*Torres-Lopez* also sets out eight additional factors referred to an "nonregulatory" factors. They are: (1) whether the work was a specialty job on a production line; (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without "material changes;" (3) whether the "premises and equipment" of the employer are used for the work; (4) whether the employees had a business organization that could or did shift as a unit from one worksite to another; (5) whether the work was piecework and not work that required initiative, judgment, or foresight; (6) whether the employee had an opportunity for profit or loss depending upon their managerial skill;

(7) whether there was permanence in the working relationship; and (8) whether the service rendered is an integral part of the alleged employer's business. 111 F.3d at 640.

### a. Specialty Job on the Production Line and Contractor Responsibilities

Whether Plaintiffs' work constituted a "specialty job on the production line" is not a relevant consideration here because there is no production line. Similarly, whether responsibilities pass from one labor contractor to another without material changes does not apply in this case because CRS and Burns do not appear to have hired any labor contractor for the Todd Village project other than Naranjo.

### b. Premises and Equipment

Although there are no employer "premises" here because of the nature of roofing work, CRS provided building materials and a forklift, the only piece of heavy machinery apparently used in CRS's work at Todd Village. This fact supports a finding that CRS employed Plaintiffs.

### c. Business Organization

Plaintiffs had no business organization. As a group, they worked only at Todd Village. This fact supports a finding that Plaintiffs were employees, but again this factor seems more relevant to determining whether a person is an employee or an independent contractor, not whether they are singly or jointly employed.

### d. Initiative, Judgment, and Foresight and Opportunity for Profit

Plaintiffs' work did not require initiative, judgment, or foresight, as their job was straightforward manual labor. Plaintiffs' opportunity for profit was only to work faster because their pay was calculated by the amount of work completed, rather than time spent working. This opportunity for profit, however, did not depend on any managerial skill that might suggest Plaintiffs are not employees. It is not obvious that these factors apply to a factual scenario like the one here, where the dispute is not whether Plaintiffs are employees or independent

contractors, but whether they have a single employer or multiple employers. Thus, the Court gives little weight to these factors.

## e. Permanence in the Working Relationship

Plaintiffs' work lasted only three weeks. Plaintiffs argue that "relative permanence" is the appropriate standard to apply here, but only cite cases that discuss seasonal work. The Court finds that there was no permanence in the working relationship, which supports Burns and CRS's position that they did not employ Plaintiffs.

## f. Integral Part of the Business

This factor strongly supports a finding that Burns and CRS employed Plaintiffs. CRS (Commercial Roofing Solutions) is in the business of roofing. Defendants seek to define their work at a more specific level of generality as "flat work" roofing rather than the kind of "shingle roofing" that Plaintiffs performed at Todd Village. But in his deposition, Burns described CRS's work simply as "roofing," and CRS holds itself out to the public as a company that performs both shingle roofing and flat work. Defendants argue that Plaintiffs were all dispensable and could easily be replaced, but the relevant question is whether the *service rendered* was integral, not whether the *workers* were integral. Plaintiffs performed a service integral to CRS's business; indeed, they performed precisely the work that constituted CRS's business.

Considering all of these factors, the Court finds that CRS acted as Plaintiffs' joint employer under the FLSA because the "economic reality" was that Plaintiffs were economically dependent upon CRS and CRS was well-positioned to ensure compliance with the FLSA. Although the parties also argue over CRS's status as an employer under Oregon law, Oregon has adopted the FLSA's economic realities test. *See Cejas Commercial Interiors, Inc. v. Torres-Lizama*, 260 Or. App. 87 (2013). Thus, the same joint employment analysis applies to Plaintiffs' state law claims. CRS jointly employed Plaintiffs under both the FLSA and Oregon law.

**B. Burns is Personally Liable for Any FLSA and Oregon Wage Law Violations**

Plaintiffs argue that Burns is personally, jointly, and severally liable for the violations of the FLSA and Oregon wage laws that guarantee minimum wages and overtime pay. The FLSA defines an employer as "any person acting directly or indirectly in the interests of an employer in relation to any employee." 29 U.S.C. § 203(d). "[T]he definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' but is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999) (internal quotation marks omitted). "Where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the [FLSA]." *Id.* at 1012 (internal quotation marks omitted). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Boucher v. Shaw*, 572 F.3d 1087, 1094 (9th Cir. 2009) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511, 1514 (1st Cir. 1983)); *see also Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013) ("Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status. Instead, to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment.").

Burns is personally liable under the FLSA because he exercised the same control over the employment relationship with Plaintiffs as did CRS. Indeed, CRS acted through Burns, who exercised ultimate authority over the subcontractor agreement with Naranjo. Substantially the same facts and analysis about whether CRS was an employer apply to Burns because he

exercised "control over the nature and structure of the employment relationship, or economic control over the relationship." *Lambert*, 180 F.3d at 1012.

Defendants contend that Plaintiffs failed to allege Burns' personal liability in their complaint, citing ¶¶ 26 ("Defendant Commercial Roofing employed Plaintiffs.") and 31 ("Defendants Commercial Roofing and Misael Naranjo jointly employed Plaintiffs for the purpose of wage payment protections under federal and Oregon state minimum wage and overtime laws."). But at ¶ 22, Plaintiffs allege that "Burns acted on behalf of Defendant Commercial Roofing in regards to the employment of Plaintiffs," and Plaintiffs' claims for relief allege that "Defendants violated [the FLSA] when they failed to pay Plaintiffs the minimum wage rate for all the hours worked." Complaint ¶ 59. The first paragraph of Plaintiffs' complaint defines "Defendants" as CRS, Burns, and Naranjo, collectively. And where Plaintiffs' claims for relief relate only to a specific defendant, Plaintiffs explicitly named that defendant. *Id.* at ¶ 68 ("Defendant Naranjo acted as a construction labor contractor in employing Plaintiffs in violation of ORS 658.440."). Similarly, Plaintiffs allege that "Defendants" violated Oregon's minimum wage law and timely payment of wages law. *Id.* at ¶¶ 62, 65. Although the complaint could have been clearer on this point, it nevertheless gave adequate notice to Burns that Plaintiffs alleged his personal liability on these claims. The Court finds that Plaintiffs properly alleged their FLSA and Oregon wage claims against Burns in his personal capacity.

**C. Defendants Violated the Oregon Timely Payment of Wages Law**

The parties do not dispute that Plaintiffs never were paid for their roofing work. CRS and Burns can only avoid liability on this claim if they did not "employ" Plaintiffs and thus do not incur liability under OCRA. For the reasons discussed above, CRS and Burns did employ Plaintiffs and thus violated Oregon's timely payment of wages law, Or. Rev. Stat. § 652.140.

**D. Naranjo Was a Labor Contractor Under Oregon Law, and CRS Violated OCRA**

The Court has already entered an order of default against Naranjo. OCRA provides that any person who knowingly uses the services of an unlicensed labor contractor is personally, jointly, and severally liable to any employee as far as the employee has not been paid wages in full for their work. Or. Rev. Stat. §§ 658.415(8), 658.465. Naranjo did not have the license and certificates of insurance required of labor contractors, and Burns and CRS, therefore, did not "inspect" or "preserve a copy" of any such license as required by OCRA. Or. Rev. Stat. 658.405, *et seq*. Defendants assert, however, that Naranjo was not acting as a labor contractor and thus did not require a license or insurance and did not need to comply with the requirement to provide laborers with written terms and conditions of employment.

> A "construction labor contractor" is defined as "any person that:
>
> (A) For an agreed remuneration or rate of pay, recruits, solicits, supplies or employs workers to perform labor for another in construction;
>
> (B) For an agreed remuneration or rate of pay, recruits, solicits, supplies or employs workers on behalf of an employer engaged in construction; or
>
> (C) Enters into a subcontract with another for any of the activities described in subparagraph (A) or (B) of this paragraph.

Or. Rev. Stat. § 658.405(2)(a). A "construction labor contractor" does not include "[a] person that supplies building materials or machinery, other than manual tools or hand-operated power tools, for a construction project." Or. Rev. Stat. § 658.405(2)(b)(C).

Defendants first argue that Naranjo was not a labor contractor because he was not paid to recruit, solicit, supply, or employ workers to perform labor for Burns or CRS, but rather was contracted to perform the roofing work at Todd Village. They further contend that, in any event, Naranjo was excluded from the definition of a labor contractor because he supplied machinery

for the project. Plaintiffs respond that Naranjo meets the definition of a labor contractor under both subsections (A) and (B) of § 658.405(2)(a) and Naranjo supplied only the kinds of machinery that OCRA's implementing regulations identify as insufficient to qualify for an exemption from the labor contractor requirements.

The "Subcontractor Agreement" (ECF 17-6) did not explicitly discuss the provision of labor. Rather, it stated that Naranjo would "install roofing materials provided at Todd Village." Burns and CRS, however, understood the contract as primarily or entirely about the provision of labor. Burns described Naranjo as a "labor only type subcontractor" whose responsibility was to provide "all the labor, all the personnel to complete the labor, and every—pretty much the whole—removal and installation of the project itself. And I was required to provide him with material and some equipment, such as a lift, debris boxes, that type of stuff." Burns Dep. 42 (ECF 17-7); Burns Corp. Dep. 56-57 (ECF 17-8).

Burns also believed he was obliged to inspect Naranjo's required licenses and insurance certification, suggesting that Burns expected Naranjo to act as a labor contractor. In his deposition, Burns explained that he asked Naranjo to produce those documents early in the project, but Naranjo never did so. Burns Dep. 46 (ECF 17-7). Burns "didn't think much about" Naranjo's initial failure to produce the documents. Plaintiffs later told Burns about Naranjo's failure to pay wages, prompting Burns to revisit the license requirement. Burns told Naranjo that "if you don't have a [contractor's] license like you told me you had, then I can't have you on this project." *Id.* at 37.

Burns and CRS argue that the Subcontractor Agreement, by its terms, contemplated that Naranjo's responsibility was to complete the Todd Village project rather than provide labor for the project, but Burns and CRS do not explain the distinction or cite any authority on this point.

Naranjo hired Plaintiffs to complete the roofing work using CRS's materials and heavy machinery, with Naranjo providing various tools. This arrangement accorded with Burns's expectations. Defendants' argument appears premised on the need to distinguish labor contractors from general contractors, who may provide labor in addition to taking responsibility for an entire project. But OCRA identifies a series of exceptions to address this issue: a person is not subject to the labor contractor requirements if that person has a construction contract with the owner of real property, if that person has obtained building permits, or if that person supplies building materials or machinery other than manual tools or hand-operated power tools, among other exceptions. Or. Rev. Stat. § 658.405(2)(b). None of these exceptions apply in this case.

Defendants' argument that Naranjo was exempted from the definition of a "labor contractor" because he supplied machinery is unavailing. Burns testified that Naranjo provided air-guns, air compressors, nail-guns, and other tools. But these items are insufficient to exclude Naranjo from the definition of a "labor contractor." OCRA's implementing regulations state that

> 'supplies building materials or machinery, other than manual tools or hand-operated power tools' means to make a substantial investment in a construction project. The investment may be provided by supplying heavy equipment needed to complete the project, such as bull dozers, cranes, land movers, etc. Supplying tools that may be used by hand, such as hammer, skill saws, table saws, reciprocating saws, *nail guns*, saw horses, *compressors*, bazookas (for drywall installation) and similar tools would not constitute a substantial investment in the project sufficient to create an exemption.

Or. Admin. R. 839-015-0004(28) (emphasis added). The tools that Naranjo provided are therefore insufficient to satisfy the exception. The only piece of heavy machinery the parties discuss was a forklift that CRS provided. Naranjo did not make the "substantial investment" in the Todd Village project required to exempt him from OCRA's requirements.

CRS knowingly used the services of an unlicensed labor contractor in violation of OCRA, which requires a person who uses a labor contractor to examine and retain a copy of the labor contractor's license. Or. Rev. Stat. § 658.437(2); Or. Admin. R. 839-015-0605. The parties agree that neither Burns nor any other CRS employee examined or retained Naranjo's license (a license that he did not in fact possess). Summary judgment in Plaintiffs' favor is appropriate as to their claims against CRS for its failure to comply with OCRA.

**E. Burns is Not Personally Liable for the Failure to Inspect the Labor Contractor License**

OCRA states that "any person who uses the services of a labor contractor who has failed to comply with any of the provisions of [the licensing] section . . . shall be personally and jointly and severally liable to any employee as far as the employee has not been paid wages in full for the work done for that person [and shall] be personally liable for all penalty wages due." Or. Rev. Stat. § 658.415(8). A "person" may be an individual or a business entity. Or. Admin. R. 839-015-0004(23). Defendants argue that the use of the word "or" in this Oregon regulation precludes the imposition of liability on both a person *and* a business entity. Defendants, however, cite no authority for this proposition. Plaintiffs contend that courts have awarded damages to both individuals and business entities in OCRA claims, but their cited authority does seem to support their claim. Further, the Court has not uncovered case law on this specific issue and thus treats it as a matter of first impression.

Although OCRA is a remedial statute intended to protect workers, the Court is hesitant to interpret it so broadly as to create personal liability for corporate officers acting on behalf of a corporation. Naranjo's Subcontractor Agreement described a relationship between Naranjo and CRS, not between Naranjo and Burns. Further, the facts of this case do not support a finding that Burns personally benefitted apart from his role as an officer and owner of CRS, a corporate entity.

### F. Naranjo "Employed" Plaintiffs Under the FLSA and Oregon Law

Defendants briefly argue that not even Naranjo employed Plaintiffs, and thus CRS and Burns cannot be liable for any unpaid wages under OCRA. This question is apparently rendered moot by the Court's finding that CRS and Burns jointly employed Plaintiffs, but in any event, Defendants' argument fails. Their motion for summary judgment incorrectly applied the "right-of-control" test for employment from *Chard v. Beauty-N-Beast Salon*, 148 Or. App. 623 (1997). Plaintiffs correctly note that *Chard* was overruled by *Cejas Commercial Interiors, Inc. v. Torres-Lizama*, which held that the test of an employment relationship in Oregon is the economic-realities test: the same test that federal courts apply in FLSA claims, as discussed above. 260 Or. App. 87, 103 (2013). Defendants provided little explanation to support their claim that Naranjo—who hired, supervised, and agreed to pay for the roofing work at Todd Village—was not Plaintiffs' employer, and their argument fails. Naranjo was Plaintiffs' employer under state and federal law.

## CONCLUSION

Defendants' motion for summary judgment (ECF 15) is DENIED, except as to Plaintiffs' claim that Defendant Burns is personally liable for violations of OCRA. Plaintiff's motion for partial summary judgment (ECF 16) is GRANTED on all other claims. After conferring, the parties are directed to contact the Courtroom Deputy within two weeks from the date of this Opinion and Order to obtain a trial date on all remaining issues.

**IT IS SO ORDERED**.

DATED this 16th day of March, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge